UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 8:20-cv-514-SDM-CPT
         8:13-cr-237-SDM-CPT

STEPHEN DONALDSON, SR.
_____/

**ORDER**

Donaldson moves under 28 U.S.C. § 2255 (Doc. 1) to vacate and challenges the validity of his convictions for a count of conspiring to defraud the United States and for two counts of aiding and assisting false and fraudulent income tax returns, for which convictions Donaldson is imprisoned for seventy-six months. Rule 4, Rules Governing Section 2255 Cases, requires both a preliminary review of the motion to vacate and a summary dismissal "[i]f it plainly appears from the face of the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief . . . ." *Accord Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)[1] (finding the summary dismissal of a Section 2255 motion was proper "[b]ecause in this case the record, uncontradicted by [defendant], shows that he is not entitled to relief"); *Hart v. United States*, 565 F.2d 360, 361 (5th Cir. 1978) ("Rule

---

[1] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

4(b) [Rules Governing § 2255 Proceedings], allows the district court to summarily dismiss the motion and notify the movant if 'it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief . . . .'"). *See United States v. Deal*, 678 F.2d 1062, 1065 (11th Cir. 1982) (citing *Wright* and *Hart*).

Donaldson and his co-defendant Duane Crithfield were found guilty after an eleven-day bench trial. The district court varied downward to seventy-six months' imprisonment when sentencing Donaldson and varied downward to fifty-four months' imprisonment when sentencing Crithfield. Donaldson's motion to vacate asserts three claims that attack his sentence as compared to Crithfield's sentence.

## I.  FACTS

On direct appeal the circuit court summarized the facts as follows (Doc. 505 in 13-cr-237 at 2–3):

> In the 1990s, Appellants established a network of companies and trusts, largely incorporated offshore, to promote and sell to closely held businesses the Business Protection Plan ("BPP"), a purportedly lawful, insurance-based tax shelter. Donaldson promoted and sold the BPP and Crithfield was a director and officer of several of the offshore entities within the commercial enterprise. The BPP effectively operated as follows: a closely held business paid a lump-sum premium in exchange for an insurance policy issued by either Fidelity Insurance Company ("Fidelity") or Citadel Insurance Company ("Citadel"), two entities within Appellants' commercial enterprise. That business then deducted that premium from its taxable income as an "ordinary and necessary" business expense. After collecting the premium, Appellants' enterprise charged the business either 15% or 17% of the premium, a rate ostensibly lower than the business's nominal marginal tax rate, and then allocated the remaining 83% or 85% to a segregated trust or limited liability company

>   ("LLC") set up solely for that business. The business then assumed control of that trust or LLC, which contained the remaining portion of its premium, without paying any tax or interest on that premium.

In 2001 Fidelity obtained from a law firm a legal opinion that the BPP structure was "more likely than not" lawful, that is, that a client's purchase of a BPP policy was "more likely than not" an ordinary and necessary business expense that was deductible by the client under applicable law. However, the BPP structure described in detail in the legal opinion was based on false representations by the defendants. In 2003 the legal opinion was withdrawn when material inaccuracies in the defendants' — and, hence, the opinion's — factual representations were discovered. Later another legal opinion was obtained from another law firm approving the BPP structure. The district court explained that the second opinion letter was proof of criminal intent (Doc. 365 at 28–29):

>   [T]he issuance and withdrawal of the earlier opinion letter and the issuance of the later opinion letter show that the defendants knew exactly the lies they needed to tell the lawyers (or knew, at least, what the lawyers needed to hear) in order to achieve a favorable legal opinion (necessary to successful marketing of the BPP); that the defendants told the lawyers the necessary lies and achieved the desired opinion (which the lawyers refused to renew upon discovering the lies); and that the lawyers told the defendants exactly what was impermissible in the design and operation of the BPP. Despite the tax lawyers' repeated warnings, the defendants marketed and operated the BPP and the associated enterprises in a manner inconsistent with the representations the defendants believed were necessary to the lawyers' opinion that participation in the BPP "more likely than not" resulted in an ordinary and necessary business expense.

On appeal the circuit court concluded that "[t]he evidence supports the district court's finding that the BPP had no economic substance independent of a taxpayer's federal income-tax considerations, and was thus a substantive sham." (Doc. 505 in 13-cr-237 at 11)

## II.  MOTION TO VACATE

Donaldson asserts three claims of ineffective assistance of counsel, specifically, (1) that trial counsel was ineffective for (a) not objecting to the district court's increasing the imposed sentence based on Donaldson's facial expression during trial and (b) not objecting to the imposition of a disparate sentence compared to the co-defendant's sentence and (2) that appellate counsel was ineffective for not appealing the preceding two alleged claims of ineffectiveness of trial counsel.  Each claim is meritless.

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Donaldson claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the

> Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Donaldson must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect

on the judgment." 466 U.S. at 691–92. To meet this burden, Donaldson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Donaldson cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

## IV.  GROUNDS FOR RELIEF

Donaldson and co-defendant Crithfield each faced a sentence of 97–121 months' imprisonment under the sentencing guidelines.  The district court varied downward both in sentencing Donaldson to imprisonment for seventy-six months and in sentencing Crithfield to imprisonment for fifty-four months.  Each ground in Donaldson's motion to vacate is based on this sentencing difference of twenty-two months.

### A.  Ground One:

Donaldson alleges that trial counsel rendered ineffective assistance at sentencing by not objecting to his sentence, which was a downward variance, because his sentence was twenty-two months more than his co-defendant's sentence. Donaldson alleges that "the trial judge stated that the additional sentence of 22 months was a result of his penalizing Donaldson for 'smirking' during trial."  (Doc. 2 at 1)

Donaldson offers no citation to the record to support his accusation that the district judge "stated" that the sentence was in retaliation for Donaldson's "smirking."  In fact, the transcript of Donaldson's sentencing contains neither "smirk" nor any form of "smirk" (for example, "smirked," "smirking," or the like). The transcript predictably contains nothing to support the implausible notion that a district judge would enhance a criminal sentence because a defendant "smirked" — much less that the judge would "state" or otherwise confirm on the record that a

sentence was based on something such as a defendant's smirking, which is unknown to, and foreign to, the lawful principles of sentencing.

A review of the transcript confirms, however, that the district judge used the term "smug" in discussing the factors under 18 U.S.C. § 3553(a):

> [F]actor number one on the — under 3553(a), is the seriousness of the offense. And there are a lot of ways to measure that. The offense here was protracted. It was certainly calculated very finely and I would say almost exquisitely calculated and refined and it was sternly implemented, unwaveringly and unflinchingly pursued. And the prospective reward was large. Actually, not just for the perpetrators, but to a certain extent there was benefit to be had by the victims.
>
> But make no mistake, I don't think this arrangement was accidental, it wasn't inadvertent, it wasn't negligent, it was — if it was anything, it was smug. And there's a certain — always certain element of condescension and presumption in those who make marks of their customers.

(Doc. 436 at 120)  Perhaps Donaldson mistakes the district judge's reference to the smugness that is often characteristic of a financial fraudster during the heyday of the fraudulent scheme for a reference to an unidentified "smirk" by Donaldson during trial.  In any event, the accusation that the district judge increased Donaldson's sentence — which resulted from a downward variance — because of a facial gesture (if one occurred) by Donaldson at trial is utterly without a basis in the record or in common sense.  The argument is meritless.

**B.  Ground Two**:

Donaldson alleges that trial counsel rendered ineffective assistance at sentencing by not objecting to the twenty-two-month difference between his 76-month sentence and Crithfield's 54-month sentence.  Donaldson and Crithfield

faced the same sentencing range (97–121 months) under the guidelines, however the district court granted both defendants a variance. In determining Crithfield's sentence the district court varied downward in consideration of his health, the cost to house him, his lack of prior record, and his personal history. In determining Donaldson's sentence the district court varied downward in consideration of his age, his lack of a prior record, and due to the circumstances of his spouse.

The district judge recognized the need to avoid unwarranted disparities in sentencing and prefaced imposing Donaldson's sentence with the following explanation (Doc. 436 in 13-cr-237 at 123–24):

> And 3553(a) admonishes consideration of the avoidance of unwarranted disparities; in other words, that an offender should be sentenced in a manner that is not different in some — for some arbitrary and capricious reason materially from sentences imposed upon similarly situated and similar offenders.
>
> It's not as straightforward an analysis that it looks like it is, because sometimes sentences can be quite different at the end, but actually not disparate in the sense intended by 3553(a); in other words, that two sentences are different in fact does not mean they are disparate within the meaning of the statute. For example, if one defendant is 92 years old and feeble and the other one is 25 years old and full of vim and vigor and they created a — participants in the exact same offense, the sentences may very differently, quite a bit, but not be disparate, because the statutory purposes of sentencing can be achieved with a much smaller sentence to 92-year-old than to his co-conspirator, the 25-year-old, particularly if the 25-year-old has four felony offenses. So differently situated people can be sentenced much differently without creating a disparity. So it's not necessary, for example, that you and your co-defendant receive the same sentence in order for it to be said that the sentences that you and he received are not disparate within the meaning of 3553.
>
> In sum, I think among the dominant factors here, in addition to the fact that you are a first offender with a record, that is

> personal biography, that is generally laudable, that this was a calculated and large-scale offense, it was involving a number of mechanisms that are typical of fraudulent activity, it was, as I said, carefully calculated and professionally implemented and it seems to me that it's deserving of a stern sentence. Again, not one that's excessive, given all the personal circumstances of the defendant.

The district court granted a downward variance and sentenced Donaldson to seventy-six months imprisonment for count one and thirty-six months imprisonment for counts two and three, all terms concurrent. (Doc. 436 at 125 in 13-cr-237) In determining the variance, the district court considered the reasons that Donaldson now advances in support of his demand for the same sentence his co-defendant received. As the district court explained at sentencing, differing sentences and differing variances do not equate to an "unwarranted disparity" or an unreasonable sentence. Donaldson's receipt of a downward variance and, consequently a below-the-guidelines sentence is not unreasonable merely because the sentence differs from Crithfield's sentence. The district court's determination that Crithfield warranted a greater variance does not mean that the district court penalized Donaldson. Ground two lacks merit.

## C.  Ground Three:

Donaldson alleges that appellate counsel rendered ineffective assistance by not arguing the claims of ineffective assistance of counsel alleged in grounds one and two. *Strickland* governs an ineffective assistance of appellate counsel claim. *Dell v. United States*, 710 F.3d 1267, 1273 (11th Cir. 2013). Proof that appellate counsel omitted an issue on appeal is not proof of deficient performance because counsel

need not raise every nonfrivolous issue. *Jones v. Barnes*, 463 U.S. 745 (1983); *Eagle v. Linahan*, 279 F.3d 926, 940 (11th Cir. 2001) (*citing Barnes*). Additionally, claims of ineffective assistance of trial counsel are generally not reviewable on direct appeal, *United States v. Tyndale*, 209 F.3d 1292, 1294 (11th Cir. 2001).

An appellate advocate provides effective assistance by omitting weaker claims and advancing only the stronger claims. As *Johnson v. Alabama*, 256 F.3d 1156, 1188 (11th Cir. 2001), *cert. denied* 535 U.S. 926 (2002), explains:

> It is difficult to win a *Strickland* claim on the grounds that appellate counsel pressed the wrong legal arguments where the arguments actually pursued were reasonable in the circumstances. We have emphasized that even in a death penalty case, counsel must be "highly selective about the issues to be argued on appeal . . . ." *United States v. Battle*, 163 F.3d 1, 1 (11th Cir. 1998). The district court, having considered the record and [appellate counsel]'s testimony during the state post-conviction proceeding, found that [appellate counsel] had carefully considered many of the claims now raised in appeal, but ultimately chose to pursue the claims he felt were most likely to prevail and winnow out the arguments he thought were less persuasive.

"Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Overstreet v. Warden*, 811 F.3d 1283, 1287 (11th Cir. 2016) (internal quotation marks omitted). Moreover, "the Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues." *Eagle*, 279 F.3d at 940 (*citing Barnes*).

As determined above, neither ground one nor ground two — the issues Donaldson alleges that appellate counsel rendered ineffective assistance by not appealing — allege a substantial claim of ineffective assistance of trial counsel and, as shown above, each is refuted by the record. Consequently, ground three lacks merit.

The motion under Section 2255 to vacate the sentence (Doc. 1) is **DENIED**. The clerk must enter a judgment against Donaldson, close this case, and enter a copy of this order in the criminal action.

**DENIAL OF BOTH
CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL IN FORMA PAUPERIS**

Donaldson is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Donaldson must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural

issues, Donaldson is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Donaldson must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on August 25, 2021.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE